IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Case Nos. 5:90CV1704 and |
| ) | 5:05CV2031 |
| ) | |
| ) | JUDGE ANN ALDRICH |
| v. ) | |
| ) | |
| SUMMIT EQUIPMENT & SUPPLIES, INC., ) | |
| AND BENJAMIN J. HIRSCH ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**CONSENT DECREE**

## TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
IV.     STATEMENT OF PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
V.      DEFINITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
VI.     REIMBURSEMENT OF RESPONSE COSTS/PAYMENT OF PENALTY . . . . 15
VII.    REPORTING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
VIII.   ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . .23
IX.     DUE  CARE  AND  COOPERATION  . . . . . . . . . . . . . . . . . . . . . 27
X.      FAILURE TO COMPLY WITH CONSENT DECREE . . . . . . . . . . . . . . . . . .28
XI.     COVENANT NOT TO SUE BY UNITED STATES . . . . . . . . . . . . . . . . 31
XII.    RESERVATION  OF  RIGHTS  BY  UNITED  STATES  . . . . . . . . . . . .32
XIII.   COVENANT  NOT  TO  SUE  BY  SETTLING  DEFENDANTS  . . . . . .33
XIV.    EFFECT  OF  SETTLEMENT/CONTRIBUTION  PROTECTION  . . . .35
XV.     DISPUTE  RESOLUTION  . . . . . . . . . . . . . . . . . . . . . . . . .37
XVI.    CERTIFICATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XVII.   NOTICES AND SUBMISSIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XVIII.  RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
XIX.    COMPLETE AGREEMENT/APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . 41
XX.     CONSENT  DECREE  MODIFICATIONS  . . . . . . . . . . . . . . . . . . . 41
XXI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . 42
XXII.   EFFECTIVE AND TERMINATION DATES . . . . . . . . . . . . . . . . . . . . . . . 42
XXIII.  SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XIV.    FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

## CONSENT DECREE

## I. BACKGROUND

A.     In September 1990, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a Complaint in Civil Case No. 5:90CV1704, pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), seeking recovery of costs incurred or to be incurred in responding to the release or threatened release of hazardous substances at or in connection with the Summit Equipment & Supplies, Inc., Superfund site in Akron, Ohio ("SES Site or "Site") from Settling Defendants, Mr. Benjamin J. Hirsch and Summit Equipment & Supplies, Inc., and four other potentially responsible parties.

B.     As a result of the release or threatened release of hazardous substances at the SES Site, EPA and the United States Defense Logistics Agency ("DLA") have undertaken response actions at or in connection with the SES Site under Sections 104 and 106 of CERCLA, 42 U.S.C. §§ 9604 and 9606 and EPA will undertake additional response actions in the future.  In performing these response actions, DLA and EPA have incurred and EPA will continue to incur response costs at or in connection with the SES Site.

C.     In response to the release or threat of release of  hazardous substances at the SES Site, EPA conducted a removal action from approximately March 1987 through 1991, which included the removal of materials laden with Polychlorinated Biphneyls ("PCBs") and other materials contaminated with hazardous substances, site investigations, inspections, and other types of response action.  Numerous tests and studies of the soil and groundwater at the SES Site

1

revealed extensive contamination. The soil was contaminated with hazardous substances, including PCBs, copper, mercury, and lead, among others. The groundwater at the SES Site was also found to be contaminated with hazardous substances, including PCBs and metals.

D.       From 1991 through 1997, DLA continued the site investigations of the soil and groundwater and completed numerous removal activities and other response actions, with EPA oversight, including: characterizing, segregating and decontaminating 4,000 cubic yards of scrap material; disposal of 2,000 tons of contaminated scrap; disposal of more than 160 drums containing PCBs and mercury contaminated soil, among other items; and removal of ordnance for destruction.

E.       In July 1992, the Court granted the United States' Motion for Summary Judgment on liability against Settling Defendants in Civil Case No. 5:90CV1704, holding that Settling Defendants were liable under Section 107(a)(1) and (a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (a)(2), as "owners and operators" of the SES Site. The Court also found that three other parties were liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as generators that "arranged for disposal" of hazardous substances. *See* 805 F. Supp. 1422 (N.D. Ohio 1992).

F.       On or about June 30, 1998, EPA issued the Record of Decision (ROD) for remediation of the SES Site. Under the ROD, the remedial action for the soil at the SES Site was: (1) excavation and off-site disposal of soils contaminated with PCBs, copper, and mercury until established clean-up objectives were met; and (2) removal of unexploded ordnance. The groundwater remedial action selected in the ROD for the SES Site was monitored natural attenuation of the groundwater at the SES Site for thirty years, through semi-annually monitoring

2

for the first five years, and annually thereafter, with placement of restrictions on future land and groundwater use at the Site.

G. To address the soil contamination at the SES Site from PCBs, copper, and mercury, DLA excavated for off-site disposal more than 65,000 tons of soil, debris and other material, with EPA oversight. The soil remedial activities were completed in November 2000.

H. In August 2002, EPA found that the soil remediation for the SES Site was successfully completed and closed out this aspect of the remedy.

I. In October 1998, DLA began implementing the groundwater remedial action at the SES Site, with EPA oversight, through groundwater sampling, analysis, reporting, and other activities, including operation and maintenance work.

J. In August 2003, EPA issued its first Five-Year Review Site Report to assess whether remaining remedial actions being implemented at the Site are protective of human health and the environment. Based upon groundwater monitoring results, the Report indicated that virtually all hazardous substances of concern have fallen below their remedial goals, and the groundwater remedy is being implemented successfully at the Site.

K. In November 2005, the United States filed a First Amended Complaint in Civil Case No. 5:90CV1704, on behalf EPA and DLA, pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, seeking recovery of costs incurred or to be incurred in responding to the release or threatened release of hazardous substances at or in connection with the SES Site from Settling Defendants and all other potentially responsible parties ("alleged generators").

L.      On March 17, 2006, the Court entered the Consent Decree between the United States, including EPA and DLA, and all alleged generators of hazardous substances disposed of at the SES Site in Civil Case No. 5:90CV1704. [Doc. # 573]. Upon entry of the Consent Decree, DLA ceased work at the SES Site, and EPA took over responsibility for completing the remaining response activities at Site, including all groundwater sampling, analysis, reporting, and other activities, including operation and maintenance work.

M.      After reimbursements obtained pursuant to the Consent Decree [Doc.# 573], EPA has unrecovered response costs in the amount of $1,044,867.01, through December 31, 2005, including prejudgment interest accruing from March 20, 1990, through August 15, 2006.

N.      DLA has incurred unrecovered response costs in the amount of $19,097,654.55, through June 2002.

O.      In August 2005, the United States filed a Complaint in Civil Case No. 5:05CV2031, on behalf of EPA, under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), asserting that the Settling Defendants failed to provide information as required under Section 104(e), which EPA requested on August 16, 2004, regarding hazardous substances disposed of at the SES Site and Settling Defendants' ability to reimburse the government its response costs incurred at the SES Site.

P.      In July 2006, the United States' Motion for Partial Summary Judgment as to liability against Settling Defendants was granted in Civil Case No. 5:05CV2031 for their failure to comply with EPA's information request issued to Settling Defendants in August 2004, pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).

Q.     The United States has reviewed the Financial Information submitted by Settling Defendants to determine what amount Settling Defendants are financially able to reimburse the United States for its response costs incurred at or in connection with the SES Site and what amount Settling Defendants are able to pay as a civil penalty for their failure to comply with EPA's information request, as required, under Section 104(e) of CERCLA.  Based upon its review of this Financial Information, identified in Appendix A, the United States has determined that Settling Defendants are able to pay the amounts specified in Section VI (Reimbursement of Response Costs/Payment of Civil Penalty).

R.     The United States and Settling Defendants agree that settlement without further litigation is the most appropriate means of resolving the collective litigation against Settling Defendants in Civil Case Nos. 5:90CV1704 and 5:05CV2031.

S.     The Parties agree and this Court, by entering this Consent Decree, finds that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED, ADJUDGED, and DECREED:

## II.  <u>JURISDICTION</u>

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b), and also has personal jurisdiction over Settling Defendants.  Settling Defendants consent to and shall not challenge the

terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent

Decree.                                   **III.  PARTIES BOUND**

2.      This Consent Decree is binding upon the United States and upon Settling

Defendants and Settling Defendants' heirs, successors, administrators, executors, transferees,

and assigns.  Unless otherwise agreed to in writing by EPA, no change in any rights or interests

relating to the SES Site Property, including but not limited to, easements, fee interests, leasehold

interests, mortgage interests, or beneficial interests in any trust that holds legal title to such

property, shall alter Settling Defendants' obligation to comply with the requirements of this

Consent Decree, or to ensure compliance by any purchaser, lessee, mortgagee, successor, assign,

or any other person acquiring or having an interest in the SES Site Property with the

requirements specified in Section VIII (Access and Institutional Controls) and/or Section IX

(Due Care and Cooperation).

3.       Settling Defendants shall include in any purchase and sale agreement, lease, or

any other instrument of conveyance for the SES Site Property, including but not limited to deeds

that are to be recorded with the Summit County, Ohio Recorder's Office, a notice that the SES

Site Property is subject to this Consent Decree, setting forth the case caption, civil case numbers,

and the Court having jurisdiction.  Furthermore, Settling Defendants shall file a memorandum of

agreement setting forth such notice for the SES Site Property with the Summit County, Ohio

Recorder's Office within sixty (60) days after the Effective Date of this Consent Decree.

4.      It shall be Settling Defendants' obligation to require compliance by any person

possessing or hereafter acquiring any interest in the SES Site Property, or who conducts  any

operations on the SES Site Property, to comply with the relevant portions of the Consent Decree

with regard to the SES Site Property, as specified in Section VIII (Access and Institutional Controls) and/or Section IX (Due Care and Cooperation), and Settling Defendants shall reserve in any such conveyance, or in any agreement to permit one or more third parties to conduct operations on the SES Site Property, the right to monitor compliance by such person(s).  Settling Defendants shall remain liable to EPA for any stipulated penalties that may accrue due to any non-compliance by such person(s).

5.      At least thirty (30) days prior to the conveyance or transfer of any interest in any portion of the SES Site Property, including but not limited to, fee interests, leasehold interests, mortgage interests, or beneficial interests in any trust that holds legal title to such property, including leasehold interests or easements, Settling Defendants shall notify EPA and DOJ of their intention to make such a conveyance or transfer in accordance with Section XVIII (Notices and Submissions).  This notice shall also include a description of both the current and expected future activities on that portion of the SES Site Property to be conveyed, leased, or otherwise alienated.  At least fifteen (15) days prior to such conveyance or transfer, Settling Defendants shall provide a copy of this Consent Decree to the proposed transferee and the conveyance or transfer documents shall include a provision requiring the transferee to comply with Section VIII (Access and Institutional Controls) and Section IX (Due Care and Cooperation).  Any transfer of any interest of any portion of the SES Site Property without complying with this Paragraph constitutes a violation of this Decree.

## IV.  **STATEMENT OF PURPOSE**

6.    <u>General Objectives</u>.  By entering into this Consent Decree, the mutual objectives of the Parties are:

a.    to reach a final settlement among the Parties that allows Settling Defendants to make cash payments to the United States that they are financially able to pay, based upon the Financial Information submitted to the United States; to resolve Settling Defendants' liability under Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for injunctive relief with regard to the SES Site and for response costs incurred and to be incurred at or in connection with the SES Site; and to resolve Settling Defendants' liability for civil penalties under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e);

b.    to provide for access to the SES Site Property by EPA and the State as required for taking response actions; to accept and impose institutional controls in the form of groundwater and land use restrictions, as specified by Section VIII (Access and Institutional Controls), that EPA has determined are necessary to implement the remedy at the SES Site; to ensure the protectiveness of remedial measures performed or to be performed at the Site; and to exercise due care and cooperate with EPA and the Ohio EPA with respect to matters relating to response activities at the SES Site in accordance with Section IX (Due Care and Cooperation).

## V.  **DEFINITIONS**

7.    Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are

used in this Consent Decree or in any appendix attached hereto the following definitions shall apply:

       a.     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq*.

       b.     "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

       c.     "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

       d.     "DLA" shall mean the United States Defense Logistics Agency, an agency within the United States Department of Defense, and any successor departments, agencies or instrumentalities of the United States.

       e.     "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

       f.     "Effective Date" shall mean the effective date of this Consent Decree as provided by Section XIII.

       g.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

       h.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i.    "Environmental Restoration Account, Defense" shall mean the account established by 10 U.S.C. § 2703.

j.    "Fair Market Value" shall mean the price at which any of the SES Assets would change hands between a willing buyer and a willing seller under actual market conditions, neither the buyer nor the seller being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

k.    "Financial Information" shall mean those financial documents identified in Appendix A, which also included any insurance policies issued to Settling Defendants that potentially provide for insurance coverage with respect to the SES Site.

l.    "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

m. "Net Proceeds" shall mean the total value of all consideration received by Settling Defendants for each Transfer of SES Assets less:

(i). any closing costs or similar costs of sale or transfer so as to effectuate the Transfer of any SES Assets; provided, however, such closing costs or similar costs of sale or transfer shall be limited to those reasonably incurred and actually paid by Settling Defendants in connection with the Transfer of the SES Asset(s) in question;

(ii). any payments owed to, or otherwise due to any person holding a *bona fide* secured interest in, or to, any such SES Assets, if such security interest was given subsequent to the Effective Date of this Consent Decree and has been disclosed in writing as required under Paragraph 16.a; and

(iii). federal, state and local taxes, including sales taxes, paid Settling Defendants, if any, incurred as a result of the sale or transfer of the SES Assets or receipt of the proceeds therefrom.

n. "Ohio EPA" shall mean the Ohio Environmental Protection Agency.

o. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

p. "Parties" shall mean the United States and the Settling Defendants.

q. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

11

r.    "SES Assets" shall mean the assets of Mr. Benjamin J. Hirsch's business that he owns and operates as a sole proprietor, which business is currently known as Summit Equipment and Supplies, and which is currently located at, or near, 1190 Home Avenue in Akron, Ohio.  The business of Summit Equipment and Supplies involves the buying and selling of metal (including steel and aluminum), metal products or metal parts, including, but not limited to, new and used industrial or machine shop equipment, pipes, and parts and accessories for motorcycles or motor scooters.  The SES Assets include all of the real property, buildings, fixtures, inventory, machinery, equipment, vehicles, and all other tangible assets owned by Mr. Benjamin J. Hirsch as of the day of execution of this Consent Decree.

s.    "SES Property" shall mean the real property, buildings, and fixtures for which Mr. Benjamin J. Hirsch is the owner of record, which is located at or near 1190 Home Avenue in Akron, Ohio, comprising three parcels and approximately five acres, which are identified in the Summit County Auditor's Division under the following parcel numbers for tax assessment purposes: 6814161, 6755964 and 6814162.

t.    "SES Site Property" shall mean the property on which the SES Superfund Site is situated for which Mr. Benjamin J. Hirsch is the owner of record, which is located at or near 875 Ivor Avenue in Akron, Ohio, comprising approximately 17 acres, which are identified in the Summit County Auditor's Division under the parcel number 6741011 for tax assessment purposes, and designated by the property description in Appendix B.

u.    "Settling Defendants" shall mean Benjamin J. Hirsch and Summit Equipment & Supplies, Inc., and any heirs, successors, executors, administrators or assigns. Pursuant to sworn Financial Information submitted by Mr. Hirsch to the United States, Settling

12

Defendant Summit Equipment & Supplies, Inc., an Ohio Corporation, is not an active entity and has no assets. Rather, Mr. Hirsch owns and operates his business, known now as Summit Equipment and Supplies and located at or near 1190 Home Avenue in Akron, Ohio, as a sole proprietor, and all assets of either Summit Equipment & Supplies, Inc., or Summit Equipment and Supplies (collectively "SES") are currently in Mr. Hirsch's name.

      v.     "Site" or "SES Site" shall mean the Summit Equipment & Supplies, Inc. Superfund Site, encompassing approximately 6 acres, located at or near 875 Ivor Avenue, approximately one-half mile south of I-76 and the I-277/State Route 224 interchange in the southwest portion of Akron, Ohio, and generally shown on the map included in Appendix C.

      w.     "State" shall mean the State of Ohio, including its departments, agencies and instrumentalities.

      x.     "Transfer" shall mean each sale, assignment, transfer or exchange by Settling Defendants (or their heirs, assigns, or successors) of all, any, or some portion of the SES Assets, where the title or right to such SES Assets is:

      (i).     transferred for consideration;

      (ii).     transferred involuntarily by operation of law, including by eminent domain or by foreclosure and its equivalents following default on the indebtedness secured, in whole or in part, by the SES Assets, including, but not limited to, a deed or other assignment in lieu of foreclosure;

      (iii).     transferred due to the death of Mr. Benjamin J. Hirsch pursuant to an inheritance or bequest;

13

    (iv).    transferred as a gift; or

    (v).    is transferred in any other manner from Benjamin J. Hirsch to any other entity or person, except to a corporation or a limited liability company that Benjamin J. Hirsch may hereafter form and in which he shall be the sole shareholder so long as the subsequent corporation or limited liability company agrees, in writing, that it is a successor to Benjamin J. Hirsch as to his obligations and liabilities hereunder, and provides written notice to DLA and DOJ, in accordance with Section XVII (Notices and Submissions), of the intended formation of such corporation or limited liability company at least 15 days prior to such formation, which notice shall include copies of all documents that memorialize the subsequent corporation's or limited liability company's agreement that it is a successor to Benjamin J. Hirsch as to his obligations and liabilities hereunder.

The verb "Transferred" shall have the same meaning as "Transfer." A Transfer of SES Assets, however, does not include the sale, acquisition, assignment, transfer or exchange of inventory, machinery, vehicles, fixtures, or other tangible business assets of Mr. Benjamin J. Hirsch, provided such sales, acquisitions, assignments, transfers, or exchanges are made in the usual course of business for customary and usual consideration, and are not a fraudulent transfer as that term is defined under federal and state law. A Transfer of SES Assets further does not

14

include any expenditures necessary to operate the business in a commercially reasonable manner such as operating and administrative expenses like salaries, utilities, fuel, *etc*.

        y.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## VI. REIMBURSEMENT OF RESPONSE COSTS/PAYMENT OF CIVIL PENALTY

### A. Initial Payments of Response Costs/Civil Penalty by Settling Defendants

        8.    <u>Payment of Response Costs by Assignment</u>.  Upon the Effective Date of this Consent Decree, Settling Defendants agree to immediately pay DLA $201,624.27 by assigning to DLA all of Settling Defendants' rights or claims to this sum of money, which is being held in a suspense account, number 97X6501.0004, within the United States Department of Defense. This sum of money being held in suspense account number 97X6501.0004 represents the proceeds derived from the sale of decontaminated scrap from the SES Site during response activities by the United States.  As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States Department of Defense shall deposit, via electronic funds transfer, the sum of money being held in suspense account number 97X6501.0004 in the amount of  $201,624.27 into the Environmental Restoration Account, Defense.

9.      Initial Cash Payment: Within thirty (30) days after the Effective Date of this

Consent Decree, Settling Defendants shall pay $25,000 to the United States, in part civil penalty

and in part reimbursement of response costs, as follows:

a.      Civil Penalty.  $15,000 shall be paid to the United States Treasury as a

civil penalty for Settling Defendants' violations of Section 104(e) of CERCLA, 42 U.S.C. §

9604(e), in Civil Case No. 5:05CV2031.

b.      Response Costs:  $10,000 shall be deposited into Environmental

 Restoration Account, Defense.

10.     The total amount to be paid by Settling Defendants pursuant to Paragraph 9 shall

be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice

account in accordance with current EFT procedures, referencing USAO File Number 1990

V02312 and DOJ Case Numbers 90-11-3-633 and 633/3.  Payment shall be made in accordance

with instructions to be provided to Settling Defendants by the Financial Litigation Unit of the

U.S. Attorney's Office in the Northern District of Ohio.  Any payments received by the

Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business day.

11.     At the time of payment made pursuant to Paragraph 9, Settling Defendants shall

send notice that payment has been made to DLA, EPA and DOJ in accordance with Section

XVII (Notices and Submissions) and to:

> Financial Management Officer
> U.S. Environmental Protection Agency - Region 5
> Mail Code MF 10-J
> 77 West Jackson Boulevard
> Chicago, IL  60604

16

Such notice shall reference the Civil Case Nos. 5:90CV1704 and 5:05CV2031, the DOJ Case numbers 90-11-3-633 and 633/3 and EPA Region 5.

### B. Subsequent Cash Payment of Response Costs

12.  Within one-hundred eighty (180) days after the Effective Date of this Consent Decree, Settling Defendants shall pay an additional $25,000 to the United States, which shall be deposited into the Environmental Restoration Account, Defense.

     a.  The additional payment required by this Paragraph shall be made by wire transfer (EFT) as specified in Paragraph 10.

     b.  At the time of the additional payment, Settling Defendants shall send notice that payment has been made to DLA and DOJ in accordance with Section XVII.

### C. Subsequent Payments of Response Costs From Any Transfer Of SES Assets

13.  For each Transfer of SES Assets, Settling Defendants (or their heirs, assigns or successors) shall pay to DLA forty percent (40%) of the Net Proceeds within thirty (30) days of the effective date of such Transfer. If Settling Defendants effect a Transfer any of the SES Assets by means of a gift or a bequest, or in any other manner without receiving monetary consideration, then Settling Defendants shall pay to DLA forty percent (40%) of the documented Fair Market Value of the SES Asset.

     a.  All amounts paid to DLA under this Section VI.C. (Subsequent Payments of Response Costs From Any Transfer Of SES Assets) shall be deposited into the Environmental Restoration Account, Defense.

       b.     If any of the amounts to be paid by Settling Defendants to DLA under this Section VI.C. are equal to or greater than $10,000, then the payment shall be made by EFT as specified in Paragraph 10.

       c.     If any of the amounts to be paid by Settling Defendants to DLA under this Section VI.C. are less than $10,000, then the payment shall be made by certified or cashier's check made payable to "U.S. Department of Justice," referencing the name and address of the party making payment, the following Case Name and Number: "Summit Equipment & Supplies, Inc. (N.D. Ohio), Civil Case No. 5:90CV1704," and DOJ Case Number 90-11-3-633.  Settling Defendants shall send each check to:

> United States Attorney's Office for the Northern District of Ohio
> Financial Litigation Unit
> Carl B. Stokes United States Court House
> 801 West Superior Avenue, Suite 400
> Cleveland, OH 44113-1852

       d.     Settling Defendants shall make all necessary arrangements with the person or entity effectuating the Transfer of any SES Assets to pay DLA forty percent (40%) of the Net Sales Proceeds or 40% of the documented Fair Market Value, as applicable, within thirty (30) days of  the effective date of the Transfer.

       e.     At the time of any payment, Settling Defendants shall send notice that payment has been made to DLA and DOJ in accordance with Section XVII and shall describe what SES Assets were Transferred, to whom, and for what consideration, if any.  If no monetary consideration was received, then Settling Defendants shall include  commercially reasonable documentation that demonstrates that the payment made is equal to forty percent (40%) of the Fair Market Value of the SES Asset that was Transferred.

18

14.    <u>Required Notices of Transfers of SES Assets</u>.

  a.    <u>Prior Notice of Transfers</u>.  At least fifteen (15)  business days prior to the Transfer of any SES Assets, Settling Defendants (or their heirs, assigns, or successors) shall notify DOJ and DLA, as specified in Section XXVII, of the proposed Transfer, which notice shall include: (i) a description of the SES Assets subject to Transfer (ii) the identity of the transferee; (iii) commercially reasonable documentation that demonstrates the Fair Market Value of the SES Assets to be Transferred; (iv) the terms of the Transfer including, the consideration to be paid, estimated closing costs or similar costs to effectuate the Transfer, and taxes to be paid, and submit a copy of  any Transfer agreement;  (v) the name and address of the person or entity conducting the Transfer (e.g., title company for closings on property), including Settling Defendants if no third party is conducting the Transfer; and (vi) proof that and the date on which the Transferee was given prior notice of this Consent Decree.

  b.    <u>Prior Notice to Transferees</u>.  At least fifteen (15)  business days prior to the Transfer of any SES Assets, Settling Defendants shall provide a copy of this Consent Decree to the proposed transferee.

  c.    <u>Notice of Completion of All Transfers</u>.  Settling Defendants shall notify DOJ and DLA of the completion any Transfers of SES Assets within ten (10) days of the effective date of the Transfer and such notification shall include a work sheet setting forth the Fair Market Value, the Net Proceeds, and the applicable amount payable to DLA. For Transfers involving SES Property, such notification shall also include a copy of the relevant closing documents, including any HUD settlement statement, the purchase agreement,  and any final executed documentation for the conveyance.

19

15.     <u>Fair Market Value Baseline For Any Transfer</u>.  The consideration to be received in connection with the Transfer of any SES Assets shall not be less than the Fair Market Value, as demonstrated through commercially reasonable documentation (*e.g.,* a *bona fide* appraisal, comparative market information relied upon by those in the business or documentation from an auction sale).  For any Transfer involving SES Property, Settling Defendants shall also provide a copy of the most recent tax statement showing the assessed value of the SES Property.

16.     <u>General Obligations</u>.

        a.      <u>No Encumbrances, Mortgages or Security Interests</u>.  Nothing herein shall prevent the Settling Defendants from mortgaging, pledging or encumbering any of the SES Assets provided that:

            (i)     the proposed commercial transaction  is done for a legitimate commercial purpose;

            (ii)    Settling Defendants give at least thirty (30) days advance written notice to the United States, as specified in Section XXVII, of such proposed commercial transaction.  In such cases where for legitimate commercial reasons thirty (30) days advance notice cannot be given, Settling Defendants shall provide advance written notice as soon as practicable, but as a consequence, the proposed transaction shall be held in abeyance until Settling Defendants receive a response from the United States, to occur no later than thirty (30) days after notice is received, that it does not dispute the

20

*bona fide* commercial purpose of the proposed transaction, as provided in Subparagraph (iv) of this Paragraph;

(iii) Settling Defendants' advance written notice includes a narrative statement and encloses the relevant documents that demonstrate that the proposed transaction is for a legitimate commercial purpose, and, in cases where advance notice is less than thirty (30) days, the legitimate commercial reasons supporting why a 30-day advance written notice could not be provided; and

(iv) If the United States disputes the *bona fide* commercial purpose of any proposed transaction which mortgages, pledges or otherwise encumbers any of the SES Assets, then the proposed transaction shall be held in abeyance until resolved through the dispute resolution provisions of this Consent Decree.

b. <u>Completion of Contracts for Sale within Sixty (60) days</u>.  Settling Defendants shall make reasonable efforts to consummate the Transfer of any SES Assets pursuant to contracts for sale within sixty (60) days of satisfaction of all contingencies in any applicable contract(s).

c. <u>Continuing Obligations under this Consent Decree</u>.  In the event of the Transfer of all SES Assets, Settling Defendants shall continue to be bound by all the terms and conditions of this Consent Decree, and subject to all the benefits, of this Consent Decree, until such time as DLA, EPA, or DOJ and Settling Defendants modify this Consent Decree in writing or this Consent Decree is terminated pursuant to Section XXII.

21

17.    <u>Amendments to Timetables</u>.  If DLA and DOJ and the Settling Defendants agree in writing before the effective date of any proposed Transfer of SES Assets, the timetables set forth in this Section IV.C. may be amended by the Parties in writing as a non-material modification pursuant to Section XX (Consent Decree Modifications).  Settling Defendants, however, must submit any proposed amendment to timetables set forth in this Section VI.C., along with the basis for such amendment, at least thirty (30) days before the effective date for any proposed Transfer of SES Assets; otherwise the proposed amendment need not be considered by DOJ or DLA.

## VII.  <u>REPORTING</u>

18.    Until such time as all SES Assets have been Transferred, Settling Defendants shall submit semi-annual reports to DOJ and DLA.  The first semi-annual report shall be due 90 days after the Effective Date of this Consent Decree, and the second semi-annual report shall be due by December 30, 2007.  Each subsequent semi-annual report shall be due not later than the 15th of April and December of each calendar year.  Each report for that particular semi-annual period shall:

a.    Provide a description all SES Assets that were Transferred during the reporting period, the Net Proceeds of the Transfer and the effective date of such Transfer, or, alternatively, if no SES Assets were Transferred during the particular period, then a statement that no SES Assets were Transferred;

        b.      Provide the following sworn statement, attesting to the veracity of the

financial information submitted:

> "With knowledge of the penalties for false statements provided by
> 18 United States Code 1001 ($10,000 fine and/or five years imprisonment) and
> with knowledge that this financial information herein is submitted to affect action
> by the United States Department of Justice, I certify that I believe that the
> financial information and all accompanying documents regarding my finances are
> a true and complete statement."

19.     In addition to the information required by Paragraph 18, each report that is

submitted by the 15th of April of each calendar year shall also contain the current balance sheet

for Settling Defendants' business; provided, however, if a four-month automatic extension for

filing of Mr. Benjamin J. Hirsch's tax returns or for those of any successor entity, as permitted

herein, is taken, then the balance sheet shall be due when the tax return(s) are due, but only if

Settling Defendants first notify DOJ and DLA in writing, in accordance with Section XXVII,

that a four-month extension will be taken and the due date for the filing of such tax returns.

## VIII.   ACCESS AND INSTITUTIONAL CONTROLS

20.    <u>Generally</u>.

        a.      The Parties acknowledge that, as of the date of lodging of this Consent

Decree, Settling Defendant Mr. Benjamin J. Hirsch is the owner of record of the SES Site

Property.

        b.      As owner of the SES Site Property, Mr. Benjamin J. Hirsch shall provide

access to the SES Site and shall implement institutional controls for the SES Site Property that

consist of future land and water use restrictions, as necessary, to implement, ensure non-

interference with, or ensure the protectiveness of, the removal and/or remedial measures

performed or to be performed at the Site. These restrictions will be implemented through

easements and restrictive covenants that will, in general, limit future use of the SES Site Property to industrial use only and prohibit the use of groundwater beneath the SES Site Property.

    21.    <u>Agreement to Provide Access and Agreement Not to Interfere with Removal or Remedial Measures at the Site.</u>

    a.    Commencing on the date of lodging of this Consent Decree, Mr. Benjamin J. Hirsch shall provide the United States and the State and their representatives, including EPA and Ohio EPA and their contractors, with access at all times to the SES Site for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

    (i).    Monitoring, investigation, removal, remedial or other activities at the Site;

    (ii).    Verifying any data or information submitted to the United States or the State;

    (iii).    Conducting investigations relating to contamination at or near the Site;

    (iv).    Obtaining samples;

    (v).    Assessing the need for, planning, or implementing additional response actions at or near the Site;

    (vi).    Implementing and overseeing of the response actions;

    (vii).    Determining compliance with institutional controls;

(viii). Assessing Settling Defendants' compliance with this Consent Decree;

(ix). Determining whether the SES Site Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree; and

(x). Accessing equipment associated with the response activities for repair if it should malfunction.

b. Commencing on the date of lodging of this Consent Decree, Settling Defendants (and their agents, assigns and invitees) shall refrain from using the SES Site in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the removal or remedial measures performed or to be performed at the Site.

22. Environmental Protection Easement and Declaration of Restrictive Covenants Addressing Access Rights and Land/Water Use Restrictions.

a. Settling Defendants shall take all actions necessary to ensure that an Environmental Protection Easement and Declaration of Restrictive Covenants (the "Easement"), in substantially the form attached hereto as Appendix D is executed and recorded with the Summit County Recorder.

b. The Parties agree that this Easement shall create an easement, running with the land, that grants: (i) a right of access to all portions of the SES Site Property for the purpose of conducting response activities at the SES Site listed in Subparagraph 21.a; (ii) a right to enforce specified restrictions on the use of groundwater beneath all portions of the SES Site

Property; and (iii) a right to enforce specified restrictions on the use of the land within SES Site

Property to industrial use only, as described in Appendix B to this Consent Decree.

        c.      The Parties further agree that the Easement shall grant access rights and

the rights to enforce the land/water use restrictions referenced in Subparagraph 22.b to: (i) the

United States, on behalf of EPA, and its representatives, as third party beneficiaries; (ii) the

State, on behalf of Ohio EPA, and its representatives, as third party beneficiaries; and/or (iii)

other appropriate third party beneficiaries designated by EPA.

        d.      Within sixty (60) days of the Effective Date of this Consent Decree, the

Settling Defendants shall submit to EPA, for review and approval, a draft Easement conforming

to the requirements outlined in this Paragraph.

        e.      Within thirty (30) days after receipt of EPA's written approval of the draft

Easement, the Settling Defendants shall have the Easement executed and recorded. Within ten

(10) days of recording the Easement, Settling Defendants shall provide EPA a certified copy of

the original instrument showing the clerk's recording stamps.

        f.      If, within thirty (30) days after receipt of EPA's written approval of the

draft Easement, Settling Defendants are unable to legally and successfully record the Easement,

as required, Settling Defendants shall promptly notify the United States in writing, and shall

include in that notification a summary of the steps that Settling Defendants have taken to attempt

to comply with this Paragraph. EPA may, as it deems appropriate, assist Settling Defendants in

recording the Easement and may, in its sole discretion, require Settling Defendants to reimburse

EPA for all costs incurred, direct or indirect, by EPA in the recording the Easement or any other

necessary instruments to implement the requirement in this Paragraph.

23.     If EPA determines that land/water use restrictions as described in Subparagraph 22.b should be imposed through State or local laws, regulations, ordinances or other governmental controls to implement response activities at the Site, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's and the State's efforts to secure such governmental controls. Settling Defendants shall record the notice of any such governmental controls within ten (10) days of EPA's approval of the notice. Settling Defendants shall provide EPA with a certified copy of the recorded notice within ten (10) days of recording such notice.

24.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities related thereto under CERCLA and any other applicable statute or regulations.

## IX.  DUE CARE AND COOPERATION

25.     Nothing in this Consent Decree shall be construed to relieve Settling Defendants of their duty to comply with all applicable laws and regulations and Settling Defendants' duty to exercise due care with respect to hazardous substances at the SES Site, including, but not limited to, avoiding any actions that may cause or contribute to the creation of new releases or threat of releases of hazardous substances at or in connection with the SES Site, or future exacerbation of the release of pollutants or contaminants in the soil or groundwater at the SES Site.

26.     Settling Defendants agree to cooperate fully with EPA and its contractors and designees in the implementation of response actions at the Site and further agree not to interfere with such response actions. EPA agrees, consistent with its responsibilities under applicable law, to use reasonable efforts to minimize interference with any operations of Settling

Defendants by such entry and response. In the event that Settling Defendants become aware of any action or occurrence that causes or threatens a release of hazardous substances, pollutants, or contaminants at or from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall: (i) in addition to complying with any applicable notification requirements under Section 103 of CERCLA,

42 U.S.C. § 9603, or any other law, immediately notify EPA of such release or threatened release; and (ii) immediately take all appropriate action to prevent, abate, or minimize such release or threat of release.

## X. FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT DECREE

27. <u>Interest on Late Payments</u>. If Settling Defendants fail to make any payment by the

required due date under Section VI, then Interest shall accrue on the unpaid balance until the date of full payment.

28. <u>Stipulated Penalties for Non-Compliance with Consent Decree Obligations</u>.

a. <u>Non-Compliance with Payment Obligations</u>. In addition to the Interest required to be paid under Paragraph 27, if any payment required by Section VI is not made when due, then Settling Defendants shall also pay a stipulated penalty of $500 per day through the date of full payment.

b. <u>Non-Compliance with Certain Other Obligations</u>. If Settling Defendants fail to comply with the requirements of Section III, Paragraph 5 (Prior notice of conveyance or transfer of any interest in the SES Site Property) Section VI, Paragraphs 14 (Required Notices of

28

Transfers of SES Assets), Section VII (Reporting), Section VIII (Access and Institutional

Controls), or Section IX (Due Care and Cooperation), then Settling Defendants shall be in

violation of this Consent Decree and shall pay, as a stipulated penalty, the following amounts for

each day of each violation:

> (i).   For the first (1st) through the fourteenth (14th) day, two hundred
>        and fifty dollars ($250.00) per day/per violation;
>
> (ii).  For the fifteenth (15th) through the thirtieth (30th) day, five hundred
>        dollars ($500.00) per day/per violation; and
>
> (iii). For the thirty-first day (31st) and beyond, one thousand dollars
>        ($1,000.00) per day/per violation.

   c.   <u>Payment of Stipulated Penalties.</u>  All penalties accruing under this Section

shall be due and payable within thirty (30) days of the date of the written demand for payment of

the penalties by EPA or DLA.  All payments under this Section shall be paid by certified or

cashier's check(s), shall indicate that the payment is for stipulated penalties, and shall be

submitted to EPA or DLA in accordance with the payment instructions included in EPA's or

DLA's demand for payment.

   d.   <u>Accrual of Stipulated Penalties</u>.  Any stipulated penalties under the

Consent Decree shall begin to accrue on the day after the complete performance is due or the day

a violation occurs, regardless of whether EPA or DLA has been notified of the violation or made

a demand for payment, and shall continue to accrue through the final day of the correction of the

noncompliance or completion of the activity, regardless of whether Settling Defendants invoke

dispute resolution procedures under Section XV (Dispute Resolution), except as provided below

in Subparagraph 28.d(i).  Nothing herein shall prevent the simultaneous accrual of separate stipulated penalties and/or stipulated damages for separate violations of this Consent Decree.

(i).     For any dispute under Section XV (Dispute Resolution), stipulated penalties shall not accrue:  (1) with respect to a decision by EPA or DLA under Subparagraph 42.b during the period, if any, beginning on the twenty-first (21st) day after the date that the Settling Defendants' Statement of Position is received until the date that EPA or DLA issues a final administrative decision regarding such dispute; or (2) with respect to judicial review by this Court of any dispute under Subparagraph 42.b, during the period, if any, beginning on the thirty-first (31st) day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

e.     Notwithstanding any other provision of this Section, the United States may, in its sole unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.

f.     Payment of stipulated penalties shall not excuse Settling Defendants from performance of any other requirements of this Consent Decree.

29.     <u>Other Remedies for Non-Compliance</u>.  If Settling Defendants fail to make full payment as required by Section VI or if the Settling Defendants fail to comply with the requirements of Sections VII-IX of this Consent Decree, the United States may, in addition to any other available remedies or sanctions, bring an action against the Settling Defendants seeking injunctive relief to compel compliance with this Consent Decree and/or seeking civil penalties under Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), for the failure to comply and all

costs of such action, including, but not limited to, costs of attorney time, if the United States prevails in the action.

### XI.  COVENANTS NOT TO SUE BY UNITED STATES

30.      Except as specifically provided in Section XII (Reservations of Rights by United States), the United States covenants not to sue or take administrative action against Settling Defendants pursuant to Sections 106 or 107(a) of CERCLA, 42 U.S.C. §§ 9606 or 9607(a), with regard to the SES Site.  With respect to present and future liability, this covenant not to sue shall take effect upon receipt by DLA of the payments required by Section VI, Paragraphs 8, 9 and 12. This covenant not to sue extends only to Settling Defendants and does not extend to any other person.  This covenant not to sue is conditioned upon the complete and satisfactory performance by Settling Defendants of all of their obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VI.C. (Subsequent Payments of Response Costs From Any Transfer Of SES Assets) and Section X (Payments from Failure to Comply with Requirements of Consent Decree), and compliance with obligations under Section VII (Reporting), Section VIII  (Access and Institutional Controls),and Section IX (Due Care and Cooperation).  This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information provided to the United States by Mr. Benjamin J. Hirsch, identified in Appendix A.  If the Financial Information is subsequently determined by the United States to be false or, in any material respect, inaccurate, Mr. Benjamin J. Hirsch shall forfeit all payments made pursuant to this Consent Decree and the covenant not to sue shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way

foreclose the United States' right to pursue any other causes of action arising from the Mr. Benjamin J. Hirsch's false or materially inaccurate information.

## XII.  RESERVATIONS OF RIGHTS BY UNITED STATES

31.    The covenants not to sue set forth in Section XI do not pertain to any matters other than those expressly specified in Section XI.  The United States also reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to the following:

a.    any liability under any laws other than Sections 104(e), 106, and 107(a) of CERCLA, 42 U.S.C. §§ 9604(e), 9606 and 9607(a);

b.    liability for damages for injury to, destruction of, or loss of natural resources;

c.    liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances outside of the SES Site;

d.    liability arising from future transportation, treatment, storage, or disposal, release, or threat of release of hazardous substances at or in connection with the SES Site after signature of this Consent Decree;

e.    any liability based on a failure by Settling Defendants to meet a requirement of this Consent Decree, including, but not limited to, liability as a result of failure to exercise due care with respect to hazardous substances at the SES Site as required by Section IX (Due Care and Cooperation);

f    any criminal liability;

g.      claims to seek recovery of unrecovered response costs based upon any insurance coverage of Settling Defendants with respect to the SES Site, included with Defendants' sworn Financial Information, identified in Appendix A; and

h.      any liability for violations of Section 104(e) of CERCLA, 42 U.S.C. § 9604(e) unrelated to the SES Site, or related to the SES Site after the Effective Date of this Consent Decree.

32.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Settling Defendants, or the financial certification made by Settling Defendants in Paragraph 43, is false or, in any material respect, inaccurate.

## XIII.  COVENANTS BY SETTLING DEFENDANTS

33.     Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or its contractors or employees with respect to the SES Site or this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.       any claim arising out of response actions at or in connection with the SES Site, including any claim under the United States Constitution, the Constitution of the State of Ohio, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; and

c.       any claim against the United States, including any department, agency, or instrumentality, pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the SES Site.

Except as provided in Paragraph 35 (Waiver of Claims) and Paragraph 38 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 31(a)-(d) or (g)-(h) [Reservation of Rights by the United States] but only to the extent that Settling Defendants' claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

34.       Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

35.       Waiver of Claims.  Settling Defendants agree not to assert any claims or causes of action (including claims for contribution under CERCLA) that it may have for all matters relating to the Site against any other person who is a potentially responsible party under CERCLA at the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that the Settling Defendants may have against any other person if such person asserts a claim or cause of action relating to the Site against the Settling Defendants after the Effective

34

Date of this Consent Decree; nor shall it apply to any defense, claim, or cause of action arising out of action undertaken by the Settling Defendants in response to a future release or threat of release, in accordance with Paragraph 26, after the Effective Date of this Consent Decree.

## XIV.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

36.  Payment by Settling Defendants to EPA of the amount required by Section VI, Paragraph 9.a., shall resolve the United States' claims against Settling Defendants for civil penalties for violations under Section 104(e), 42 U.S.C. § 9604(e), as alleged in the Complaint and as found by the Court in Civil Case No. 5:05CV2031 [Docket No. 19].

37.  Except as expressly provided in Paragraph 35 (Waiver of Claims), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as expressly provided in Paragraph 35 (Waiver of Claims), the United States and the Settling Defendants each reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

38.  Waiver of Claim-Splitting Defenses.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the SES Site, the Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised in the subsequent proceeding were or should have been brought in the instant action; provided, however, that nothing in this Paragraph affects the enforceability of the covenant not to sue included in Section XII.

39.     <u>Statutory Contribution Protection</u>.  The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendants are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Sections 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with the SES Site by the United States or any other person.  The "matters addressed" in this Consent Decree do not include those matters for which the United States has reserved its rights under Section XII (Reservation of Rights by the United States) of this Consent Decree, in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

40.     Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than sixty (60) days prior to the initiation of such suit or claim.  Settling Defendants also agree that, with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, they will notify in writing the United States within ten (10) days of service of the complaint on the claim against them.  In addition, Settling Defendants shall notify the United States within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial for matters related to this Consent Decree.

41.     Each party shall bear its own costs and attorneys fees in connection with the action resolved by this Consent Decree.

## XV.  DISPUTE RESOLUTION

42.      The dispute resolution procedures of this Paragraph shall be the exclusive

mechanism to resolve disputes between the Parties arising under or with respect to this Consent

Decree.  However, the procedures set forth in this Paragraph shall not apply to actions by the

United States to enforce obligations of the Settling Defendants that have not been disputed in

accordance with this Paragraph.

a.      Informal Dispute Resolution.  Any dispute under this Paragraph shall in

the first instance be the subject of informal negotiations between the Parties.  The period for

informal negotiations shall not exceed fifteen (15) days from the time the dispute arises, unless it

is extended in writing by DLA or EPA.  The dispute shall be considered to have arisen when one

Party sends the other Party a written Notice of Dispute.

b.      Formal Dispute Resolution.  In the event that the Parties cannot resolve

any dispute under this Paragraph by informal negotiations under the preceding Subparagraph, the

formal dispute procedures outlined by this Subparagraph shall apply.

(i).      The position advanced by DLA or EPA shall be considered

binding unless, within fifteen (15) working days after the conclusion of the informal negotiation

period, the Settling Defendants invoke formal dispute resolution procedures by serving on the

United States, in accordance with Section XIX (Notices and Submissions), a written Statement

of Position on the matter in dispute.

(ii).      Following receipt of the Settling Defendants' Statement of

Position, DLA or EPA will issue an administrative decision resolving the dispute.  EPA shall

compile and maintain an administrative record of the dispute containing the Settling Defendants'

or Statement of Position and DLA's or EPA's administrative decision.  DLA's or EPA's

administrative decision shall be binding on the Settling Defendants unless, within ten (10) days of receipt of the decision, the Settling Defendants file with the Court and serves on DLA or EPA a motion for judicial review of DLA's or EPA's administrative decision, based on the administrative record compiled and maintained by DLA or EPA. Any such motion filed by the Settling Defendants shall set forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. DLA or EPA shall provide the Court a copy of the administrative record of the dispute, and may file a response to the Settling Defendants' motion.

      c.    <u>Effect of Invoking Dispute Resolution</u>. The invocation of dispute resolution procedures under this Paragraph shall not extend, postpone, or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless DLA or EPA agrees otherwise or unless the Court determines otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Failure to Comply With Requirements of Consent Decree).

# XVI. CERTIFICATION

43.     By signing this Consent Decree, Settling Defendants certify that, to the best of their knowledge and belief, they have:

a.      Conducted a thorough, comprehensive, good faith search for documents or information, and have fully and accurately disclosed to EPA, all documents or information currently in their possession, or in the possession of their officers, directors, employees, contractors or agents that relate in any way to the ownership, operation, or control of the SES Site Property or Settling Defendants' business, or to the ownership, possession, generation, treatment, transportation, storage or disposal of a hazardous substance, pollutant, or contaminant at or in connection with the SES Site;

b.      Not altered, mutilated, discarded, destroyed, or otherwise disposed of any documents or information relating to their potential liability regarding the SES Site after notification of potential liability or the filing of a suit against them regarding the SES Site;

c.      Fully complied with any and all EPA requests for documents or information regarding the SES Site and Settling Defendants' financial circumstances pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e); and

d.      Submitted to EPA Financial Information that fairly, accurately, and materially sets forth their financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendants execute this Consent Decree.

39

# XVII. NOTICES AND SUBMISSIONS

44.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice, as specified herein, shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DLA, and the Settling Defendants, respectively.

As to the United States:

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-633 and 633/3)

U.S. Mail:                                    Overnight Delivery Service:

P.O. Box 7611                                 601 D Street, N.W. – Room 2121
Washington, D.C.  20044-7611                  Washington, DC  20004

As to EPA:

Director, Superfund Division
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL   60604

As to DLA:

United States Defense Logistics Agency
Counsel, Defense Reutilization and Marketing Service
Hart-Dole-Inouye Federal Center
74 Washington Avenue North - Suite 6
Battle Creek, MI  49017-3092

As to Settling Defendants:

> Mr. Brent L. English
> Law Offices of Brent L. English
> M.K. Ferguson Plaza, Suite 470
> 1500 W. Third Street
> Cleveland, Ohio 44113-1422
>
> Counsel for Mr. Benjamin J. Hirsch and Summit Equipment & Supplies, Inc.

## XVIII.  RETENTION OF JURISDICTION

45.   This Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Consent Decree.

## XIX.  COMPLETE AGREEMENT/APPENDICES

46.      This Consent Decree and its appendices are the entire agreement of the Parties. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the list of Financial Documents submitted to the United States by Mr. Benjamin J. Hirsch;

"Appendix B" is the property description of the SES Site Property;

"Appendix C" is the map of the Site; and

"Appendix D" is the form of Easement referenced in Section VIII.

## XX.  CONSENT DECREE MODIFICATIONS

47.      There shall be no material modifications to the terms of this Consent Decree without written agreement of the Parties and approval of the Court.  Non-material modifications of the Consent Decree may be made by written agreement of the Parties, without approval of the Court, but shall be filed in this action.

## XXI.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

48.     This Consent Decree shall be lodged with the Court for a period of thirty (30)

days for public notice and comment.  The United States shall file with the Court any written

comments received and the United States' response thereto.  The United States reserves the right

to withdraw or withhold its consent if comments regarding the Consent Decree disclose facts or

considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.

The Settling Defendants consent to entry of this Consent Decree without further notice, and the

United States reserves the right to oppose an attempt by any person to intervene in this civil

action.

49.     If for any reason this Court should decline to approve this Consent Decree in the

form presented, this agreement is voidable at the sole discretion of any Party and the terms of the

agreement may not be used as evidence in any litigation between the Parties, or in any other

litigation related to the Site involving any other parties.

## XXII.  EFFECTIVE AND TERMINATION DATES

50.     The Effective Date of this Consent Decree shall be the date of entry by this Court,

following public comment pursuant to Section XXI.

51.     Upon Settling Defendants' complete and satisfactory performance of all of their

 obligations under this Consent Decree, including but not limited to, payment of all amounts due

under Sections VI and Section X, and compliance with all obligations under Section VIII

(Access and Institutional Controls) and Section IX  (Due Care and Cooperation), Settling

Defendants may request that the United States certify in writing that all of Setting Defendants'

obligations under this Consent Decree have been satisfactorily completed.  After Settling

Defendants receive such certification from the United States, then either Party may move to terminate this Consent Decree based on the representations that Settling Defendants have met all of their requirements under this Consent Decree, by attaching the United States' certification, and the Court may order such termination after conducting such inquiry as it deems appropriate. If the United States does not issue a certification that all of Setting Defendants' obligations under this Consent Decree have been satisfactorily completed, following a request by Settling Defendants, then Settling Defendants may invoke Dispute Resolution under Section XV.

## XXIII.  SIGNATORIES/SERVICE

52.     Each undersigned representative of Settling Defendants to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, or her delegate, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

53.     Settling Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

## XIV.  FINAL JUDGMENT

54.     Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute the final judgment between and among the United States and Settling
Defendants.  The Court finds that there is no just reason for delay and therefore enters this
judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED THIS __31_ DAY OF _____March_____, 2__008___ .



_____
s/Ann Aldrich

United States District Judge

44

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Summit Equipment & Supplies, Inc., and Mr. Benjamin J. Hirsch,* Civil Case Nos. 5:90CV1704 and 5:05CV2031 (N.D. Ohio).

**FOR THE UNITED STATES OF AMERICA:**

27 Dec. 2007
_____
Date

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

1/7/08
_____
Date

MARC BORODIN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611


GREGORY A. WHITE
United States Attorney for the
Northern District of Ohio

STEVEN J. PAFFILAS
Bar Reg. No. 0034376
Local Counsel
Assistant United States Attorney
Carl B. Stokes United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113-1852
Phone: (216) 622-3698
Facsimile: (216) 522-4982
steven.paffilas@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Summit Equipment & Supplies, Inc., and Mr. Benjamin J. Hirsch,* Civil Case Nos. 5:90CV1704 and 5:05CV2031 (N.D. Ohio).

9/26/07
Date

RICHARD KARL
Director, Superfund Division - Region 5
U.S. Environmental Protection Agency
77 W. Jackson Blvd.
Chicago, IL  60604

Sept 19, 2007
Date

THOMAS WILLIAMS
Associate Regional Counsel
U.S. EPA — Region V
77 West Jackson Blvd
Chicago, IL  60604

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Summit Equipment & Supplies, Inc., and Mr. Benjamin J. Hirsch*, Civil Case Nos. 5:90CV1704 and 5:05CV2031 (N.D. Ohio).

### FOR BENJAMIN J. HIRSCH:

9/18/07
Date

Signature: Benny J. Hirsch
Name (print): BENNY J. HIRSCH
Title: OWNER
Address: 75 N. PORTAGE PATH APT. 607
AKRON, OHIO 44301

### FOR SUMMIT EQUIPMENT & SUPPLIES, INC (n/k/a SUMMIT EQUIPMENT AND SUPPLIES)

9/18/07.
Date

Signature: Benny J. Hirsch
Name (print): BENNY J. HIRSCH
Title: OWNER
Address: 1140 ASHE AVE.
AKRON, OHIO 44310

## APPENDIX A: LIST OF FINANCIAL DOCUMENTS SUBMITTED TO THE UNITED STATES BY BENJAMIN J. HIRSCH

- Sworn Financial Statement and Documents for all income and assets, submitted in response to EPA's Section 104(e) Information Request, on August 21, 2006, November 8, 2006, December 2, 2006, and December 6, 2006.

- Federal Income Tax Returns (Form 1040) for 2000-2005, including Schedule C's (Profit or Loss statement from Summit Equipment and Supplies).

- Balance Sheet and Income Statement for Summit Equipment and Supplies as of December 31, 2004 and December 31, 2005.

- Deeds for Real Property Interests and Insurance Policies for the SES Site.

## APPENDIX B: LEGAL DESCRIPTION OF SES SITE PROPERTY

Situated in the City of Akron, County of Summit, and State of Ohio and known as being part of Lots 14 and 15, Tract #2, formerly Coventry Township and more fully described as follows: beginning at the intersection of the south line of Ivor Avenue and the east line of Coventry Allotment #2 as recorded in Plat Book 26, Pages 65 to 75 inclusive, thence S. 84 deg. 50' 15" E. along the south line of Ivor Avenue extended 60.0 feet; thence N. 5 deg. 09' 45" E. 235.0 feet to a point; thence S. 84 deg. 50' 15" E. 29.14 feet to a point; thence N. 89 deg. 46' 15" E. 1192.95 feet to a point; thence N. 65 deg. 08' 45" E. 236.0 feet to the east line of property owned by Benjamin J. Hirsch as deeded to him by deed recorded in Summit County Ohio records by Reception No. 54335766; thence North along aforesaid east line to the north line of Lot #15; thence West along said north line to point in the west line of Wintergreen Avenue; thence northerly along the West line of Wintergreen Avenue to the south line of the Akron Barberton Belt Railroad; thence southwesterly along the said south line to the pont of intersection of said south line and the north line of Lot 15; thence East along the north line of Lot #15 to a point which is N. 4 deg. 38' 50" E. 510.20 feet from the place of beginning; thence S. 4 deg. 38' 50" W. 510.20 feet to the place of beginning and containing 17 acres more or less.

## APPENDIX C: MAP OF THE SITE



# APPENDIX D: FORM OF EASEMENT

To be recorded with Deed
Records - ORC § 317.08

## ENVIRONMENTAL COVENANT

      This Environmental Covenant is made as of the ___ day of _____, 2008, by and among Owner Benjamin Hirsch (as further identified below) and Holder, Benjamin Hirsch (as further identified below) pursuant to Ohio Revised Code ("ORC") §§ 5301.80 to 5301.92 for the purpose of subjecting the Summit Equipment & Supply, Inc. Site ("the Site," described below) to the activity and use limitations and to the rights of access described below.

      Whereas, based on a Remedial Investigation/Feasibility Study (RI/FS) that was completed pursuant to a 1991 Administrative Order on Consent between the United States Environmental Protection Agency (EPA) and the United States Department of Defense's Defense Logistics Agency, EPA determined that the following hazardous substances, pollutants or contaminants had been released into the soil at the Site: unexploded military ordnance, polychlorinated biphenyls (in particular, Arochlor-1260), copper and mercury. The same RI/FS established that contaminants had been released into the groundwater at the Site, including hexavalent chromium, and also the volatile organic compounds trichloroethene and tetrachloroethene; and

      Whereas, EPA issued a Record of Decision (ROD) for the Site on June 30, 1998, which provided for Site fencing, removal, consolidation and off-site disposal of contaminated soils, monitored natural attenuation of groundwater contamination, and the placement of institutional controls to limit the future use of the property where remedial construction has occurred and to protect the performance of the remedy, and to prevent the exposure of humans or the environment to contaminants; and

      Whereas, following issuance of the ROD, the Defense Logistics Agency and the U.S. Army Corps of Engineers prepared and received EPA's approval of a final remedial design report, undertook removal of approximately 65,000 tons of PCB-contaminated soils and other soils from the Site; and

      Whereas, in August 2002, EPA concluded that soils removal had been successfully completed at the Site; and

      Whereas in July 2004, EPA issued an Explanation of Significant Differences (ESD) removing certain use restrictions prescribed in the ROD in view of the absence of hexavalent chromium from groundwater monitoring results; and

      Whereas, with the exception of the imposition of institutional controls as modified in the 2004 ESD, and the continued monitoring of contaminant attenuation in groundwater, the remedial action has been implemented at the Site; and

      Whereas, the Owner, Holder and Access Grantees ("parties") hereto have agreed: 1) that Owner will grant a permanent right of access over the Site to the Access Grantees (as hereafter defined) for purposes of implementing, facilitating and monitoring the remedial action,

and 2) that Owner will impose on the Site certain activity and use limitations as covenants that will run with the land for the purpose of protecting human health and the environment;

Now therefore, the Parties agree to the following:

1. <u>Environmental Covenant</u>. This instrument is an environmental covenant executed and delivered pursuant to §§ 5301.80 to 5301.92 of the ORC.

2. <u>Definitions</u>. All capitalized terms, other than proper names, shall be defined as specified herein. A capitalized term in this Environmental Covenant which is not defined herein shall have the same meaning as set forth in ORC Sections 5301.80 to 5301.90.

 A. <u>Site</u>. Means the parcel of real property, which consists of approximately seventeen acres located in the City of Akron, Summit County, Ohio as described on the attached Exhibit A, which description is incorporated here, is subject to the environmental covenants set forth herein. The Site is outlined by heavy black line on the map attached hereto as Exhibit B.

 B. <u>Owner</u>. Means Benjamin J. Hirsch who currently resides at 75 North Portage Path, Apartment 607, Akron, Ohio 44301, is the owner of the Site. Owner is one of two Settling Owner/Operator Defendants named in a Consent Decree entered by the United States District Court for the Northern District of Ohio on ____, 2008 in *United States v. Summit Equipment & Supply, Inc., et al.,* (Civil Action No. 5:90CV1704) defined in Paragraph 2.H. below).

 C. <u>Holder</u>. Means Benjamin J. Hirsch, whose address appears in Paragraph 2.B. above.

 D. <u>ROD</u>. Means the Record of Decision issued by the EPA on June 30, 1998, selecting environmental remediation actions for the Site. The ROD and other documents comprising the EPA Administrative Record for the Summit Equipment & Supply Site are maintained at the following locations: EPA Region 5; Superfund Records Center (7th Floor); 77 W. Jackson; Chicago, Illinois 60604; and the Akron-Summit County Public Library, 1040 E. Tallmadge Avenue, Akron, Ohio 44310-3516. The environmental remediation and response actions undertaken at the Site constitute environmental response projects as defined by ORC Section 5301.80(e).

 E. <u>Commercial/Industrial Uses.</u> Means (i) wholesale and retail sales and service activities including, but not limited to retail stores, and automotive fuel, sales and service facilities; (ii) governmental, administrative and general office activities, (iii) manufacturing, processing, and warehousing activities, including, but not limited to, production, storage and sales of durable goods and other non-food chain products; and (iv) activities which are consistent with or similar to the above listed activities; together with related parking areas and driveways, but excludes Residential and Other Prohibited Activities.

2

F. <u>Residential and Other Prohibited Activities</u>. Means i) single and multi-family dwellings and transient residential units; (ii) day care centers and preschools; (iii) public and private elementary and secondary schools; (iv) hospitals, assisted living facilities and other extended care medical facilities and medical and dental offices; (v) food preparation and food service facilities, including food stores, restaurants, banquet facilities and other food preparation or sales facilities; and (vi) indoor or outdoor entertainment and recreational facilities.

G. <u>Transferee</u>. Means any future owner of any interest in the Site or any portion thereof, including, but not limited to, owners of an interest in fee simple, mortgagees, easement holders, and/or lessees.

H. <u>Consent Decree</u>. Means the Consent Decree entered on _____, 2008, by the United States District Court for the Northern District of Ohio in *United States v. Summit Equipment & Supply, Inc., et al.,* (Civil Action No. 5:90CV1704), by which the Owner and Holder resolved the United States' claims against him by agreeing, among other things, to place institutional controls on the Site.

I. <u>Access Grantees.</u> Means EPA and the Ohio Environmental Protection Agency (Ohio EPA) and their successors, assigns, officers, employees, agents, contractors and other invitees

3. <u>Activity and Use Limitations on the Site</u>.

(a) Owner and Holder agree for himself and his successors in title not to permit the Site to be used in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial action which has been implemented under the ROD or which will be implemented pursuant to the Consent Decree unless the written consent of the EPA to such use is first obtained.

(b) Owner and Holder acknowledges and agrees that the Site has been remediated only for Commercial/Industrial Uses. Owner and Holder covenants for himself and his successors and assigns that future site uses shall be restricted to Commercial/Industrial Uses.

(c) Owner and Holder covenant for himself and his successors and assigns that there shall be no consumptive use of Site groundwater.

4. <u>Running with the Land</u>. This Environmental Covenant shall be binding upon the Owner and Holder and all assigns and successors in interest, including any Transferee, and shall run with the land, pursuant to ORC § 5301.85, subject to amendment or termination as set forth herein.

5.    Requirements Regarding Transfer of a Specified Interest in, or Concerning Proposed Changes in the Use of, Applications for Building Permits for, or Proposals for any Site Work Affecting Contamination on, the Site.

(a)    Neither Owner nor Holder shall transfer any interest in the Site or make proposed changes in the use thereof, or make applications for building permits for, or proposals for any work on the Site without first: (*i*) providing notice to EPA, or if Ohio EPA has been designated to be the lead agency for the Site, the Ohio EPA, as specified in Section XVII of the Consent Decree; and (*ii*) obtaining any approvals or consents thereto which are required under Sections VIII and IX of the Consent Decree.

(b)    Each instrument hereafter conveying any interest in the Site or any portion thereof shall contain a notice of the activity and use limitations as they are recited in Paragraph 3 above, and of the grants of access set forth in Paragraphs 6 and 7 of this Environmental Covenant, and shall provide the recorded location of this Environmental Covenant.  For instruments conveying any interest in the Site or any portion thereof, the notice shall be substantially in the form set forth in Exhibit C.  Owner, Holder and Transferee(s) shall notify the EPA, or if Ohio EPA has been designated to be the lead agency for the Site, the Ohio EPA, within ten (10) days of each conveyance of an interest in any portion of the Site.  The notice shall include the name, address and telephone number of the Transferee, a copy of the deed or other documentation evidencing the conveyance, a legal description of the property or interest being transferred, a survey map of the property being transferred, and the closing date of the transfer of ownership of the property or interest.

6.    Access to the Site.  Pursuant to Section VIII of the Consent Decree, Owner and Holder agrees that Access Grantees shall have, and hereby grants to each of them, an unrestricted right of access at all reasonable times to the Site to undertake the Permitted Uses described in Paragraph 7.  The right of access granted under this Paragraph 6 shall be irrevocable while this Covenant remains in full force and effect.  Owner and Holder acknowledges that EPA is at the time of signing this instrument the lead agency for ensuring compliance with the Consent Decree, but also that EPA may designate Ohio EPA to be the lead agency at some future time, in which  event EPA will give Owner and Holder notice of such designation.

7.    Permitted Uses.  The right of access granted under Paragraph 6 of this Environmental Covenant shall provide Access Grantees with access at all reasonable times to the Site, for the purpose of conducting any activity related to the ROD or the Consent Decree or the purchase of the Site, including, but not limited to, the following activities:

a)    Assessing the effectiveness of the remedial action;

b)    Verifying any data or information submitted to the United States or the State;

c)    Conducting investigations relating to contamination at or near the Site;

4

d)     Obtaining samples;

e)     Assessing the need for, planning, or implementing further response actions at or near the Site;

f)     Implementing any further response actions at or near the Site; and

g)     Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to the ROD or the Consent Decree

8.     <u>Owner Duty to Execute Environmental Covenant</u> Owner agrees to properly execute and deliver this Environmental Covenant so that it runs with the land; provides the EPA and OEPA with the authority to seek injunctive or other equitable relief for its violation pursuant to ORC Section 5301.91(A)(1)-(4); and is in compliance with ORC Section 5301.80 to 5301.92. .

9.     <u>Compliance Reporting</u> Starting thirty (30) days from the recording of this Environmental Covenant, Owner and any Transferee shall submit to the EPA a written certification that complies with the requirements of Ohio Administrative Code 3745-50-42(B)-(D) that the activity and use limitations remain in place and are being complied with and shall submit such a certification on an annual basis thereafter. At the same time, Owner shall report compliance with this Environmental Covenant pursuant to ORC Section 5301.82(B)(1) to EPA.

10.     <u>Amendments; Early Termination</u>. This Environmental Covenant may be modified or amended or terminated while Owner owns the property only by a writing signed by Owner and EPA with the formalities required for the execution of a deed in Ohio which is recorded in the Office of the Recorder of Summit County, Ohio. Upon transfer of all or any portion of the Site, Owner waives any rights that he might otherwise have under Section 5301.90 of the ORC to withhold his consent to any amendments, modifications, or termination of this Environmental Covenant, to the extent that he has transferred his interest in that portion of the Site affected by said modification, amendment or termination. The rights of Owner's successors in interest as to a modification, amendment or termination of this Environmental Covenant are governed by the provisions of Section 5301.90 of the ORC.

11.     <u>Other Matters</u>.

(a)     <u>Representations and Warranties of Owner</u>. Owner represents and warrants that he is the sole owner of the Site; that Owner holds fee simple title to the Site which is free, clear and unencumbered; that Owner has the power and authority to make and enter into this Agreement as Owner and Holder, to grant the rights and privileges herein provided and to carry out all obligations of Owner and Holder hereunder; that this Agreement has been executed and delivered pursuant to the Consent Decree; and, that this Agreement will not materially violate or contravene or constitute a

material default under any other agreement, document or instrument to which Owner is a party or by which Owner may be bound or affected.

(b)    Right to Enforce Agreement; Equitable Remedies.  Compliance with this Environmental Covenant may be enforced pursuant to ORC Section 5301.91 or other applicable law. Failure to timely enforce compliance with this Environmental Covenant or the use limitations contained herein by any party shall not bar subsequent enforcement by such party and shall not be deemed a waiver of the party's right to take action to enforce any non-compliance. In the event that Owner or any other person should attempt to deny the rights of access granted under Paragraph 6 or should violate the restrictions on use of the Site set forth in Paragraph 3, then, in addition to any rights which EPA may have under the Consent Decree, EPA shall have the right to immediately seek an appropriate equitable remedy and any court having jurisdiction is hereby granted the right to issue a temporary restraining order and/or preliminary injunction prohibiting such denial of access or use in violation of restrictions upon application by EPA without notice or posting bond.  Owner, and each subsequent owner of the Site by accepting a deed thereto or to any part thereof, waives all due process or other constitutional right to notice and hearing before the grant of a temporary restraining order and/or preliminary injunction pursuant to this Subsection 12(b).

(c)    Future Cooperation; Execution of Supplemental Instruments.  Owner agrees to cooperate fully with EPA and to assist it in implementing the rights granted to it under this Environmental Covenant and, in furtherance thereof, agrees to execute and deliver such further documents as may be requested by EPA to supplement or confirm the rights granted hereunder. Further, Owner and Holder agree to cooperate with EPA to obtain compliance with this Environmental Covenant if there is a violation of this Environmental Covenant.

(d)    Cumulative Remedies; No Waiver.  All of the rights and remedies set forth in this Environmental Covenant or otherwise available at law or in equity are cumulative and may be exercised without regard to the adequacy of, or exclusion of, any other right, remedy or option available hereunder or under the Consent Decree or at law.  The failure to exercise any right granted hereunder, to take action to remedy any violation by Owner of the terms hereof or to exercise any remedy provided herein shall not be deemed to be a waiver of any such right or remedy and no forbearance on the part of EPA and no extension of the time for Owner's performance of any obligations of hereunder shall operate to release or in any manner affect EPA's rights hereunder.

(e)    Limitation on Judicial Review; Reservation of Authority.  No action or decision by EPA related to environmental remediation at the Property shall independently give rise to judicial review under this Environmental

6

Covenant. Nothing in this Environmental Covenant shall restrict the U. S. EPA from exercising any authority it may have under applicable law. EPA reserves all of its statutory and regulatory powers, authorities, rights, and remedies, both legal and equitable.

(f)    <u>No Assumption of </u>Obligations. EPA does not assume any obligations under this Environmental Covenant. EPA's signature to this Environmental Covenant does not constitute a commitment, contract or obligation for future action on the part of EPA.

(g)    <u>Severability</u>. If any provision of this Environmental Covenant is found to be unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired.

(h)    <u>Recordation</u>. Within thirty (30) days after the date of the final required signature upon this Environmental Covenant, Owner shall file this Environmental Covenant for recording with the Summit County Recorder's Office, in the same manner as a deed to the Site, and pursuant to ORC Section 5301.88.

(i)    <u>Effective Date</u>. The effective date of this Environmental Covenant shall be the date upon which the fully executed Environmental Covenant has been recorded as a deed record for the Site with the Summit County Recorder.

(j)    <u>Distribution of Environmental Covenant</u>. The Owner shall distribute a file-stamped and date-stamped copy of the recorded Environmental Covenant to: EPA, Ohio EPA, Summit County, and each person holding a recorded interest in the Site.

(k)    <u>Notices</u> All notices, requests, demands or other communications required or permitted under this Environmental Covenant shall be given in the manner and with the effect set forth in the Consent Decree. EPA shall be the agency that receives such required notices, unless EPA notifies Owner, Holder and Transferees otherwise.

(l)    <u>Governing Law</u>. The laws of the State of Ohio shall be the law governing this Environmental Covenant, except as provided herein, and Federal law shall govern issues relating to the adequacy of the institutional controls to protect human health and the environment, and issues involving or relating to EPA. The federal court for the appropriate judicial district shall have jurisdiction of any action involving the EPA or any other agency of the United States.

(m)    <u>Captions</u>. All paragraph captions are for convenience of reference only and shall not affect the construction of any provision of this Environmental Covenant.

(n)    <u>Time of the Essence</u>.    Time is of the essence of each and every performance obligation of Owner under this Environmental Covenant.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, Owner and EPA have executed and delivered this Environmental Covenant as of the date first above written.

OWNER

_____

Benjamin J. Hirsch

STATE OF OHIO )
                  ) SS.
COUNTY OF SUMMIT )

The foregoing instrument was acknowledged before me this ____ day of _____, 2007, by Benjamin Hirsch.

_____

Notary Public

UNITED STATES OF AMERICA
On behalf of the Administrator of the
United States Environmental Protection Agency

By: _____
            Richard C. Karl, Director,
            Superfund Division, Region 5

STATE OF ILLINOIS )
                 ) SS.
COUNTY OF COOK )

The foregoing instrument was acknowledged before me this ___ day of _____, 2008, by Richard C. Karl, Director, Superfund Division, Region 5 of the United States Environmental Protection Agency, on behalf of the United States of America.

_____

Notary Public

## EXHIBIT A

### Legal Description of the "Site"

Situated in the City of Akron, County of Summit, and State of Ohio and known as being part of Lots 14 and 15, Tract #2, formerly Coventry Township and more fully described as follows: beginning at the intersection of the south line of Ivor Avenue and the east line of Coventry Allotment #2 as recorded in Plat Book 26, Pages 65 to 75 inclusive, thence S. 84 deg. 50' 15" E. along the south line of Ivor Avenue extended 60.0 feet; thence N. 5 deg. 09' 45" E. 235.0 feet to a point; thence S. 84 deg. 50' 15" E. 29.14 feet to a point; thence N. 89 deg. 46' 15" E. 1192.95 feet to a point; thence N. 65 deg. 08' 45" E. 236.0 feet to the east line of property owned by Benjamin J. Hirsch as deeded to him by deed recorded in Summit County Ohio records by Reception No. 54335766; thence North along aforesaid east line to the north line of Lot #15; thence West along said north line to point in the west line of Wintergreen Avenue; thence northerly along the West line of Wintergreen Avenue to the south line of the Akron Barberton Belt Railroad; thence southwesterly along the said south line to the point of intersection of said south line and the north line of Lot 15; thence East along the north line of Lot #15 to a point which is N. 4 deg. 38' 50" E. 510.20 feet from the place of beginning; thence S. 4 deg. 38' 50" W. 510.20 feet to the place of beginning and containing 17 acres more or less.

A plat of survey prepared by ____ is recorded in Volume ___, Page ____ of the Summit County Engineer's Records of Land Surveys.

Property Address:     875 Ivor Avenue, Akron, OH
Tax ID No.:

**EXHIBIT B**

**<u>Drawing of Site</u>**

**EXHIBIT C**

**Notice upon Conveyance of Site or any Portion thereof**

THE INTEREST CONVEYED HEREBY IS SUBJECT TO A CONSENT DECREE DATED_____, 2008, NOTICE OF WHICH WAS RECORDED IN THE OFFICE OF THE SUMMIT COUNTY RECORDER, OR BOOK [___], Pages [___-___], AND WHICH RESTRICTS THE INTEREST CONVEYED AS SET FORTH IN THIS NOTICE AND AN ENVIRONMENTAL COVENANT, DATED _____, 200_, RECORDED IN THE DEED OR OFFICIAL RECORDS OF THE SUMMIT COUNTY RECORDER ON _____, 200_, in BOOK _____, Page _____, THE ENVIRONMENTAL COVENANT CONTAINS THE FOLLOWING ACTIVITY AND USE LIMITATIONS AND ACCESS RIGHTS:

Activity and Use Limitations on the Site.

(a)     The Site shall not be used in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial action which has been implemented pursuant to the United States Environmental Protection Agency's (EPA's) June 30, 1998, Record of Decision (ROD) for the Summit Equipment & Supplies, Inc. Site, or which will be implemented pursuant to the Consent Decree unless the written consent of the EPA, or if Ohio EPA has been designated as the lead agency for the Site, the Ohio EPA, to such use is first obtained.

(b)     Site uses shall be restricted to commercial/industrial uses. The term "Commercial/Industrial Activities" includes:  (i) wholesale and retail sales and service activities including, but not limited to retail stores, and automotive fuel, sales and service facilities; (ii) governmental, administrative and general office activities, (iii) manufacturing, processing, and warehousing activities, including, but not limited to, production, storage and sales of durable goods and other non-food chain products; and (iv) activities which are consistent with or similar to the above listed activities; together with related parking areas and driveways, but excludes Residential and Other Prohibited Activities.  The term "Residential and Other Prohibited Activities" includes:  (i)  single and multi-family dwellings and transient residential units; (ii) day care centers and preschools; (iii) public and private elementary and secondary schools; (iv) hospitals, assisted living facilities and other extended care medical facilities and medical and dental offices; (v) food preparation and food service facilities, including food stores, restaurants, banquet facilities and other food preparation or sales facilities; and (vi) indoor or outdoor entertainment and recreational facilities.

(c)     There shall be no consumptive use of Site groundwater.

Access to the Site.  Pursuant to Section X of the Consent Decree and the Environmental Covenant, EPA, Ohio EPA and their successors and assigns, and employees, agents, contractors and other invitees (collectively, "Access Grantees") shall have an unrestricted right of access to the Site to undertake the Permitted Uses described below.  The Site is shown on the Survey,

which is recorded in Volume 22, Page 175 of the Summit County Engineer's Records of Land Surveys.  The right of access set forth above shall be irrevocable while the Environmental Covenant remains in full force and effect.

Permitted Uses.  The right of access granted under the Environmental Covenant shall provide Access Grantees with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to the ROD or the Consent Decree or the purchase of the Site, including, but not limited to, the following activities:

a)   Assessing the effectiveness of the remedial action;

b)   Verifying any data or information submitted to the United States or the State;

c)   Conducting investigations relating to contamination at or near the Site;

d)   Obtaining samples;

e)   Assessing the need for, planning, or implementing further response actions at or near the Site;

f)   Implementing any further response actions at or near the Site; and

g)   Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to the ROD or the Consent Decree.